| | |
|---|---|
| SCOTT JOHNSON, | No. 2:17-cv-01642-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| YONIE YOUNG; ZOLTAN VARGA; PERSIMMON HEALTH CENTER, INC., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff Scott Johnson suffers from quadriplegia and uses a wheelchair and a specially equipped van for mobility. Compl., ECF No. 1, ¶ 1. He brings this Americans with Disabilities Act ("ADA") lawsuit based on accessibility violations he alleges he encountered in an acupuncture clinic parking lot. *Id.* ¶¶ 16-19. Within a month of plaintiff's filing suit, defendants repaired the alleged accessibility barriers. Defendants now move to dismiss plaintiff's complaint for lack of subject-matter jurisdiction. Mot., ECF No. 7; Defs.' Mem., ECF No. 7-1. Plaintiff opposes. Opp'n, ECF No. 10. Defendants filed a reply. Reply, ECF No. 12. The court submitted the motion on March 16, 2018. As explained below, the court DENIES this motion.

////

////

////

I.     BACKGROUND

Plaintiff alleges that every time he visited the defendant clinic, Persimmon Community Acupuncture ("Clinic"), between September 2016 and January 2017, the parking lot contained no ADA-compliant van-accessible parking spaces. *Id.* ¶ 19. Instead, there was one standard, non-van-accessible parking space for people with disabilities. *Id.* ¶ 20. "On information and belief," plaintiff alleges there used to be a compliant, van-accessible parking space but it "either faded or got paved over" and that defendants had no "policy or plan in place to make sure that the accessible parking spaces . . . remained useable prior to plaintiff's visits" or "remain usable currently." *Id.* ¶¶ 21-24. He further alleges, "on information and belief" and with no specifics, "that there are other violations and barriers on the site that relate to his disability." *Id.* ¶ 34.

On August 7, 2017, he sued the Clinic owner, Persimmon Health Center, Inc., and the property owners, Yonie Young and Zoltan Varga, *id.* ¶¶ 2-11, for violating the ADA and the California Unruh Act, *id.* ¶¶ 36-46. He seeks an order "compelling Defendants to comply with [both laws]." *Id.* at 8, Prayer ¶ 1. A month later, defendant Young purportedly remedied these barriers by re-striping the parking lot; painting an International Sign of Accessibility ("ISA") on the pavement; and purchasing an ISA sign that says "NO PARKING" and warns that violators will be fined $250.00. Young Decl., ECF No. 7-3, ¶ 3 (describing remediation); *see also* Ex. 1 (photos). Defendant Young further declares that in October 2017, he fixed accessibility barriers in the clinic itself, based on recommendations from a Certified Access Specialist. *Id.* ¶¶ 4-10 (describing changes including buying an ADA complaint transaction table; buying another ISA sign; and adjusting accessibility of the front entrance). Citing these modifications, defendants move to dismiss plaintiff's lawsuit, contending plaintiff no longer has standing to sue and that his claims are moot. *See* Defs.' Mem. at 4-5.

II.    LEGAL STANDARD

Standing and mootness pertain to a federal court's subject-matter jurisdiction and may, as here, be cited as a basis for Rule 12(b)(1) dismissal. *See* Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Standing, which is an essential component of Article

III's case or controversy requirement, imposes injury and causation requirements that limit when a plaintiff may initiate a lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (listing elements). Mootness is triggered when the injury giving rise to the case no longer exists. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

A party may challenge subject matter jurisdiction either facially or factually. *White*, 227 F.3d at 1242. In a facial attack, the court assumes the complaint's allegations are true and assesses jurisdiction in a light most favorable to plaintiff. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, which challenges the veracity of plaintiff's jurisdictional facts, the court considers evidence beyond the complaint and does not presume the truth of all allegations. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Although cases are presumed to fall outside a federal court's limited jurisdiction until proven otherwise, jurisdictional dismissals are "exceptional" and warranted only "'where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

III. <u>DISCUSSION</u>

Defendants bring a factual challenge to the court's jurisdiction, arguing they have remedied all barriers giving rise to plaintiff's claims. Defs.' Mem. at 4-5; *see generally* Young Decl. Defendants contend their remedial measures strip plaintiff of standing to sue and that these measures moot plaintiff's claims. Defs.' Mem. at 4-5.

A. <u>Standing</u>

Defendants do not argue plaintiff lacked standing at the outset; rather they argue plaintiff lacks standing now that the barriers have purportedly been removed. *Id.* at 4.

The court disagrees. Because standing is assessed at the time the complaint is filed, defendants' subsequent remediation does not invalidate plaintiff's standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 568 n.4 (1992). Plaintiff had standing when he filed his complaint: He alleged he previously visited the Clinic but could not fully enjoy it because defendants did not maintain a van-accessible parking lot. Compl. ¶¶ 18-20, 25-27, 29-30, 33. This failure, plaintiff

contends, violated the ADA and the Unruh Act. *Id*. ¶¶ 36-46. These allegations satisfy all standing requirements, as plaintiff adequately alleges injury in fact traceable to defendants' conduct that a favorable decision could resolve. *See Friends of the Earth*, 528 U.S. at 180-81 (listing standing elements); *cf. Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008) (plaintiff had standing where he previously visited public accommodation and is currently deterred from visiting that accommodation by accessibility barriers). Defendants' later remediation does not alter this conclusion. *See Lujan*, 504 U.S. at 569 n.4; *cf. Friends of the Earth*, 528 U.S. at 175 ("[W]e have held that citizens lack statutory standing under § 505(a) to sue for violations that have ceased by the time the complaint is filed.") (citation omitted).

Plaintiff has standing. The question, rather, is whether defendants' remedial action moots plaintiff's claims.

B. <u>Mootness</u>

Defendants concede the Clinic's parking lot did not previously meet accessibility standards, but contend plaintiff's claim is moot because the parking lot now meets those standards. Defs.' Mem. at 4-5. In opposition, plaintiff contends defendants' accessibility barriers could easily recur, triggering the "voluntary cessation" mootness exception. Opp'n at 6-7.

Generally a claim becomes moot when "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" at issue. *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). There is, however, a well-recognized exception where the defendant voluntary stops the offending conduct. *Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). When mootness is based on such "voluntary cessation," defendants face a "heavy burden" to persuade the court that the challenged conduct cannot reasonably be expected to recur, "otherwise they would simply be free to 'return to their old ways after the threat of a lawsuit had passed.'" *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72, (1983) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) (brackets omitted)).

Some courts decline to apply the voluntary cessation mootness exception to similar scenarios, deeming accessibility remediation efforts sufficiently permanent. *See, e.g.*, *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2005) (concluding that by installing

permanent guard rails, defendant restaurant mooted plaintiff's ADA claims; finding no basis to conclude the rails would be removed); *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997) (concluding parking lot modifications mooted ADA claim because defendants would be subject to the "high cost of litigation" if non-compliance recurred), *reversed on other grounds by Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008).

But other courts inquire further to ensure defendants could not simply remove, or on the other hand inadequately maintain, a structural modification after dismissal for mootness. One factor these courts look to is a defendant's past conduct, as it may predict possible recurrence. *See In Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 860 (N.D. Cal. 2011) (holding restaurant's past failures to follow accessibility policies showed discrimination may recur despite recent structural modifications). Another predictive factor is the amount of money defendants have spent on remediation efforts. *See, e.g.*, *Houston v. 7–Eleven, Inc.*, No. 13-60004, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014) (finding discrimination unlikely to recur where restaurant spent over $30,000 repaving and restriping the parking lot, enlarging disabled parking space and access aisle, remodeling restroom, relocating sink, installing tile floor, and relocating storage room); *see also Kennedy v. Nick Corcokius Enters., Inc.*, No. 15-cv-80642, 2015 WL 7253049, at *4 (S.D. Fla. Nov. 17, 2015) (finding recurrence doubtful where defendant invested "time and money in remedying these twenty-five separate violations"); *Harty v. N. Lauderdale Supermarket, Inc.*, No. 14-civ-62945, 2015 WL 4638590, at *5 (S.D. Fla. Aug. 4, 2015) ("It would be absurd to expect Defendant to spend money to undo the structural modifications it just paid to implement.").

Here, defendants have not met their "heavy burden" to show plaintiff's claims are moot because they have not shown the alleged parking lot accessibility violations will not recur. Defendants contend they repaved and restriped the accessible parking space and purchased a $76.87 ISA sign. Young Decl. ¶¶ 3, 6. It is easy to image a newly-striped parking spot could go without maintenance. *Cf. Johnson v. Tackett*, 272 F. Supp. 3d 1198, 1204 (E.D. Cal. 2017) (similar facts; same conclusion). And defendants' remediation costs are not so significant as to

5

persuade the court that possible recurrence is unlikely.  *Cf. Houston*, 2014 WL 351970, at *2 ($30,000 modifications enough to show unlikely recurrence).

Plaintiff also has alleged facts showing defendants' policies and past conduct indicate the possibility of recurrence.  Plaintiff alleges he sporadically visited the Clinic over the course of five months and faced the same accessibility barriers each time.  Compl. ¶ 16 (visits in September, October, November and December 2016, and January 2017); *cf. Tackett*, 272 F. Supp. 3d at 1204 (finding likely recurrence in similar ADA case where plaintiff visited the parking lot only twice before filing suit).  He also alleges the Clinic once had a compliant, van-accessible parking space but it "either faded or got paved over"; he alleges defendants have no "policy or plan in place" to ensure maintenance of accessible parking spaces; and he alleges the violations at issue "are easily removed without much difficulty or expense."  Compl. ¶¶ 21-24, 31.  All of these allegations together persuade the court that it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at 189.

In short, on the current record, considering the relatively small-scale and arguably temporary remediation efforts, the court finds defendants have not met their "very high" burden to establish mootness.

IV. CONCLUSION

The court DENIES defendants' motion.  An initial scheduling conference is set for **May 24, 2018 at 2:30 p.m.,** with a joint status report as required by the court's initial scheduling order due 7 days before.

IT IS SO ORDERED.

This order resolves ECF No. 7.

DATED: April 19, 2018.

UNITED STATES DISTRICT JUDGE